1

2  **MICHAEL S. BERG  (CA. Bar No. 102972)**
   **Attorney at Law**
3  **401 West "A" Street, Suite 2600**
   **San Diego, California  92101**
4  **Telephone: (619) 239-2186**
   **Fax: (619)  237-1310**
5

6  **Attorney for Gonzalez-Ruiz**

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10                        **(HON. WILLIAM Q. HAYES)**

11  UNITED STATES OF AMERICA,              )  No.  07-3472-WQH
                                           )
12         Plaintiff,                      )  NOTICE OF MOTIONS AND MOTIONS TO:
                                           )  1) DISMISS THE INDICTMENT DUE TO AN
13         vs.                             )  INVALID DEPORTATION;
                                           )  2)  DISMISS THE INDICTMENT BECAUSE IT
14  RODOLFO GONZALEZ-RUIZ,                 )  FAILS TO ALLEGE ESSENTIAL ELEMENTS
                                           )  OF THE OFFENSE.
15         Defendant.                      )
                                           )  DATE: August 18, 2008
16  _____       )  TIME:   2:00 p.m.

17

18    TO: KAREN HEWITT, UNITED STATES ATTORNEY, AND DAVID KATZ,  THE ASSISTANT
                          UNITED STATES ATTORNEY:

19         PLEASE TAKE NOTICE that on Monday, August 18, 2008 at 2:00 p.m., or as soon thereafter as

20   counsel may be heard, the defendant, RODOLFO GONZALEZ-RUIZ, by and through his counsel,

21   Michael S. Berg, will move this Court to issue an order granting the motions listed below.

22                                        MOTIONS

23         The defendant, Rodolfo Gonzalez-Ruiz, by and through counsel, Michael S. Berg, asks this Court

24   pursuant to the United States Constitution and Fed. R. Crim. P. 12, 16 and 26, and all other applicable

25   statutes and local rules for an order to:

26         1) Dismiss the Indictment Due to an Invalid Deportation; and

27         2) Dismiss the Indictment Because it Fails to Allege Essential Elements of the Offense.

     / / /

1

2      These motions are based upon the instant motions and notice of motions, the attached statement of

3      facts and memorandum of points and authorities, the files and records in the above-captioned matter,

4      and any and all other materials that may come to this Court's attention prior to or during the hearing of

5      these motions.

6

7                                          Respectfully submitted,

8

9

10     Dated: July 19, 2008          S/ Michael Berg
                                     MICHAEL S. BERG
11                                   Attorney for Gonzalez-Ruiz

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1

2    **MICHAEL S. BERG  (CA. Bar No. 102972)**
     **Attorney at Law**
3    **401 West "A" Street, Suite 2600**
     **San Diego, California  92101**
4    **Telephone: (619) 239-2186**
     **Fax: (619)  237-1310**
5

6    **Attorney for: Gonzalez-Ruiz**

7

8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10                         (HON. WILLIAM Q. HAYES)

11

12   UNITED STATES OF AMERICA,              )
                                            )  No.  07-3472-WQH
13          Plaintiff,                      )
                                            )  STATEMENT OF FACTS AND
14          vs.                             )  MEMORANDUM OF POINTS AND
                                            )  AUTHORITIES IN SUPPORT OF MOTIONS
15   RODOLFO GONZALEZ-RUIZ,                 )  FOR:
                                            )  1)  PRODUCTION OF BRADY MATERIAL;
16          Defendant.                      )  2)  DISCOVERY; AND
                                            )  3)  LEAVE TO FILE FURTHER MOTIONS
17   _____

18                      STATEMENT OF RELEVANT FACTS

19          Mr. Gonzalez was born in Tijuana , Baja California on June 25, 1967. His father is Luis

20   Gonzalez-Ruiz and his mother is Maria Eugenia Buenrostro. Though divorced, both parents still live in

21   Los Angeles.  Mr. Gonzalez reports that he traveled with his family from Mexico to Los Angeles when

22   he was eight months old.  Mr. Gonzalez has two sisters and three brothers. His childhood  was  stable

23   and without any traumatic events.  His parents were poor yet supportive.

24          Mr. Gonzalez obtained permanent residency as a youngster through the efforts of his parents.

25   On June 2, 1987, Mr. Gonzalez was convicted of Being Under the Influence of a Controlled Substance

26   and was subsequently deported after a hearing before an Immigration judge.  Unfortunately, the

27   deportation tape either no longer exists or cannot be located.

His problems as a youth continued and he was convicted of Grand Theft Auto in 1987 and Robbery in 1988. He was deported at Calexico on August 22, 1989 by order of Immigration judge Angel Cosme.  In 1989 and 1990 he added two robbery convictions and was given an eight year prison sentence.  After serving that sentence, he was ordered deported at Calexico by Judge Staton. As a result of  a parole violation, on June 10, 1994,  he received twelve months. While he was incarcerated at Chino, he was interviewed by INS and determined to be illegal. On May 9, 1995, he was ordered deported by Judge Williams at a hearing at Donovan State Prison but not before he was prosecuted in 1995 for illegal entry. Upon his release from Donovan State Prison, he was transferred into federal custody and appeared before the Honorable William B. Enright.  Judge Enright sentenced Mr. Gonzalez to 63 months.  Mr. Gonzalez was subsequently deported in 2000 after completing that sentence and two more deportations in 2003 and 2007.

On July 31, 1992, Mr. Gonzalez married Sonia Quezada in Norco, California. This marriage resulted in three children, Serina (21) ,Daniel (15) who is in high school, and Christopher (3) .

THIS COURT SHOULD DISMISS THE INDICTMENT DUE TO
AN INVALID DEPORTATION

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation."  United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998).  A defendant such as Mr. Gonzalez, who is charged with illegal reentry under section 1326, has a Fifth Amendment right to attack his removal order collaterally because the removal order serves as a predicate element of his conviction.  United States v. Mendoza-Lopez, 481 U.S. 828, 837-838 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding.").  See also United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (citing Zarate-Martinez and Mendoza-Lopez for these principles).

To successfully collaterally attack his deportation, Mr. Gonzalez must demonstrate that: 1) he

exhausted all administrative remedies available to him to appeal his removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and, 3) the entry of the order was fundamentally unfair.  8 U.S.C. § 1326(d); Ubaldo-Figueroa, 364 F.3d at 1048.  "An underlying removal order is 'fundamentally unfair' if:  '1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects.'"  Ubaldo-Figueroa, 364 F.3d at 1048 (citing Zarate-Martinez, 113 F.3d at 1197) (brackets omitted).

Importantly, although Mr. Gonzalez carries the initial burden on the issue of prejudice, once Mr. Gonzalez makes a prima facie showing of prejudice, ***the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome***.  United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003).  As explained below, Mr. Gonzalez can demonstrate each of the elements necessary for this Court to sustain his collateral attack.

### A.    Mr. Gonzalez is Exempt from the Exhaustion Requirement

The exhaustion requirement of section 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of the right to an administrative appeal did not comport with due process. United States v. Ubaldo-Figueroa, 364 F.3d at 1043 (citing United States v. Muro-Inclan, 249 F.3d 1180, 1189 (9th Cir. 2001), cert. denied, 534 U.S. 879 (2001)).  A waiver does not comport with due process if it is not considered and intelligent.  Id.  An alien's waiver of his right to appeal his deportation order is not considered and intelligent if the alien is not personally informed of his right to appeal or where the record contains an inference that the petitioner is eligible for relief from deportation, but the Immigration Judge (IJ) fails to advise the alien of the possibility.  Id. at 1049.

Mr. Gonzalez's due process rights were violated because he was specifically told by the immigration judge that he was ineligible for relief under former § 212(c) (specifically "any relief") and was denied the opportunity to present evidence in support of his attempt to challenge deportation.

Additionally, although the quality of the 1998 deportation tape is poor at best, it appears that at the

conclusion of the deportation proceedings, Mr. Gonzalez's attorney preserved his right to appeal.

Nonetheless, Mr. Gonzalez waived his right to appeal by failing to file an appeal within the requisite time period.  "It is of no significance to the due process inquiry that Ubaldo-Figueroa's counsel was asked if he wanted to appeal Ubaldo-Figueroa's removal order.  The due process inquiry focuses on whether Ubaldo-Figueroa personally made a 'considered and intelligent' waiver of his appeal."  Ubaldo-Figueroa, 364 F.3d at 1049, fn. 8.  Because Mr. Gonzalez was erroneous informed that he was ineligible for relief, any assumed waiver of his right to appeal was not voluntary or intelligent.

A waiver of the right to appeal a removal order does not comport with due process when it is not "considered and intelligent."  Id.  See also United States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir. 2004); United States v. Leon-Paz, 340 F.3d 1003, 1005 (9th Cir. 2003). As the Ninth Circuit held in Pallares-Galan:

For a waiver to be valid, the government must establish by "clear and convincing evidence," Gete v. INS, 121 F.3d 1285, 1293 (9th Cir. 1997), *that the waiver is "considered and intelligent.*" U.S. v. Lopez-Vasquez, 1 F.3d 751, 753-754 (9th Cir. 1993)(en banc); see also U.S. v. Gonzalez-Mendoza, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding a due process violation where immigration judge failed to inquire whether right to appeal was knowingly and voluntarily waived).

Pallares-Galan, 359 F.3d at 1097 (emphasis added.).  In this case, the government cannot establish by clear and convincing evidence that Mr. Gonzalez's appellate waiver was "considered and intelligent," because Mr. Gonzalez's waiver was based on inadequate and inaccurate advisals regarding his rights.

Moreover, Mr. Gonzalez never waived appeal.  He in fact reserved his right to appeal. Nevertheless, even if this court determines that Mr. Gonzalez failed to preserve this right, any presumed waiver is neither knowing nor intelligent due to the misadvisals.

1.    Mr. Gonzalez Was Inadequately Advised Regarding the Appellate Waiver.

The colloquy between the IJ and Mr. Gonzalez demonstrates that any purported waiver was not considered and intelligent as the IJ informed both Mr. Gonzalez and his counsel that he did not qualify for

any type of relief; United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000) (finding due process violation in a section 1326 collateral appeal because IJ failed to tell the defendant about his eligibility for waiver of deportation); United States v. Arce-Gonzalez, 163 F.3d 559, 563 (9th Cir. 1998) (same). Significantly, the IJ in this case clearly informed Mr. Gonzalez and his attorney that he was not eligible for any relief and that further, there was no need to continue the hearing because he had an aggravated felony. Like the appellate advisals held inadequate in the cases cited above, the IJ's appellate advisal in this case was invalid.  Because Mr. Gonzalez's waiver of appeal was invalid, he may attack the validity of his prior deportation without having exhausted his judicial remedies.

Of course, the IJ's statement that there was no "relief available" to Mr. Gonzalez would have suggested to Mr. Gonzalez that he would not receive any benefit from an appeal, making any subsequent appellate waiver invalid. Because Mr. Gonzalez was not permitted to apply for relief pursuant to section 212(c), his deportation hearing was far from "full and fair" as required by law.  See Castro-Cortez v. INS, 239 F.3d 1037 (9th Cir. 2001) (a full and fair hearing is required under the Due Process Clause).

### 2.The Removal Order Was Fundamentally Unfair.

A removal order is "fundamentally unfair" if: 1)  the defendant's due process rights were violated by defects in the removal proceedings, and 2) the defendant suffered prejudice as a result of the defects. Ubaldo-Figueroa, 364 F.3d at 1048.  Mr. Gonzalez's due process rights were violated because the IJ affirmatively prevented Mr. Gonzalez from applying for § 212(c) relief.  It is clear that Mr. Gonzalez had plausible grounds for relief.

> **a.** The Underlying Removal Hearing Deprived Mr. Gonzalez of Due Process Because The IJ Informed Mr.  Gonzalez That He Was Ineligible for Relief

The indictment must be dismissed because the IJ failed to inform Mr. Gonzalez of his opportunity for relief from deportation under § 212(c) of the Immigration and Naturalization Act and denied him a hearing on the merits of his application for relief.  At the deportation hearing conducted on October 22, 1998, the IJ erroneously advised Mr. Gonzalez that he was ineligible for any relief because he sustained a conviction for an aggravated felony in November 18, 1996.

1

2      At the time Mr. Gonzalez pleaded guilty, INA § 212(c) provided relief from deportation to legal

3   permanent residents who accrued seven years of lawful unrelinquished domicile, and had not served a total

4   of five years or more for one or more aggravated felony convictions. See 8 U.S.C. § 1182(c) (1994 ed.

5   Supp. V); INA § 212(c). Although discretionary, §212(c) waived almost all grounds of deportability and

6   inadmissibility. However, in 1996 Congress enacted two pieces of legislation which drastically restricted

7   the relief available to noncitizens who committed certain crimes. The Anti-Terrorism and Effective Death

8   Penalty Act ("AEDPA"), enacted on April 24, 1996, restricted aggravated felony convictions from waiver

9   under INA § 212(c). See Pub. L. 104-132, 110 Stat. 1214 (April 24, 1996). The Illegal Immigration

10   Reform and Immigrant Responsibility Act ("IIRIRA") enacted on September 30, 1996 added new offenses,

11   such as rape and sexual abuse of a minor, to the list of aggravated felonies and eliminated relief under §

12   212(c) entirely for people placed in removal proceedings on or after April 1, 1997. See Division C of the

13   Omnibus Appropriations Act of 1996 (H.R. 3610), Pub. L. No. 104-208, 110 Stat. 3009 (September 30,

14   1996); see also INS v. St. Cyr, 533 U.S. 289, 293-297 (2001) (discussing 1996 amendments to INA §

15   212(c)).

16

17      In St. Cyr, the Supreme Court applied the two prong test in Landgraf v. USI Film Products, 511 U.S.

18   244, 260-261 (1994) to determine whether IIRIRA's repeal of § 212(c) relief could be applied retroactively.

19   The first step in the impermissible-retroactive-effect determination is to ascertain whether Congress has

20   directed with the requisite clarity that the law be applied retrospectively. The second step is to determine

21   whether a law attaches new legal consequences to events completed before its enactment.

22      With respect to the first  prong, the Court noted that "[r]etroactive statutes raise special concerns."

23   St. Cyr, 533 U.S. at 315. "Accordingly, 'congressional enactments ... will not be construed to have

24   retroactive effect unless their language requires this result.'" Id. at 315-16 (citations omitted). The Court

25   emphasized that:

26   [The] presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal

27   doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals

should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal."

Id. at 316. Given the presumption against retroactive application of disadvantageous changes in the law and the longstanding principle construing any doubt in a deportation statute in favor of the non-citizen, the Court concluded that Congress did not express with the requisite clarity that IIRIRA's repeal of § 212(c) be applied retroactively. Id. at 320. Therefore, the statute may not be applied in a manner which would cause new legal consequences to attach to events completed before its enactment.

With respect to the second prong, the Court concluded that the statute **did** attach new legal consequences to events completed before its enactment because, even though relief under former INA § 212(c) was discretionary, there is a clear difference between facing possible deportation and facing certain deportation. Id. at 291.

Mr. Gonzalez was charged in January of 1995 for his first conviction, Assault with Great Bodily Injury. At the time of Mr. Gonzalez's offense, § 212(c) relief was available for individuals like him who had accrued seven years of lawful domicile in the United States and had not served five years or more for one or more aggravated felony convictions. However, by the time that Mr. Gonzalez was ordered deported based upon this conviction, on October 22, 1998, 212(c) relief was no longer in existence. Therefore, under St. Cyr and the Due Process Clause, he was eligible for relief under 212(c). Because relief would have been available to him at the time he was charged and plead, the Immigration Judge ("IJ") had the obligation to correctly inform Mr. Gonzalez of its availability and allow him to apply for relief. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). ( "We have stated that where the record contains an inference that the petitioner is eligible for relief from deportation, 'the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.'"); United States v. Arce- Hernandez, 163 F.3d 559, 563 (9th Cir.1998)(same); Moran-Enriquez v. INS, 884 F.2d 420, 423 (9th Cir. 1989) (holding IJ must advise even

those aliens who "do[] not have the wherewithal to make a complete showing of eligibility" for 212(c) relief that they have the right to apply for such relief); see also id. ("[w]e read the 'apparent eligibility' standard . . . to mean that where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws – as IJs no doubt are – raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility . . . ."). This requirement to properly advise individuals of their eligibility for relief is "mandatory." Arrieta, 224 F.3d at 1079.

In Arce-Hernandez, the IJ erred by failing to advise the alien of his right to apply for relief from deportation. See id. at 563. The Ninth Circuit held that this failure resulted in a due process violation, depriving him of judicial review because an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right. Id. The record of Mr. Gonzalez's deportation hearing, clearly indicates that Mr. Gonzalez was informed that he was ineligible for § 212(c) relief. In fact, when his attorney seemed to have asked for a continuance to discuss whether relief was available, the IJ stated, "I don't see any purpose of continuing it. He has an aggravated felony. He's not eligible counsel. Your request is denied."

An IJ's failure to advise the alien of his eligibility for relief from deportation makes a deportation proceeding defective. Ubaldo-Figueroa, 364 F.3d at 1048. See also Arce-Gonzalez, 163 F.3d at 563 ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue."); Lopez-Vasquez, 1 F.3d at 754 (holding that IJ hearing deprived petitioner's right to due process even where the IJ explained the right to appeal and provided petitioner with a form explaining his right to an appeal in Spanish because the information was given to him in a group format); Mendoza-Lopez, 471 U.S. at 840 (failure of IJ to advise alien of his right to appeal and his eligibility for a waiver of deportation violated his due process rights and "amounted to a complete deprivation of judicial review of the determination); Arrieta, 224 F.3d at 1079 (finding due process violation because IJ failed to tell defendant about his eligibility for a waiver of deportation); Moran-Enriquez v. INS, 884 F.2d 420, 423 (9th Cir. 1989) (where record, fairly reviewed by a

person intimately familiar with the immigration laws (the IJ) raises a reasonable possibility that the petitioner may be eligible for relief, the IJ must advise the alien of this possibility, if the petitioner is not advised of this possibility, the appellate waiver is invalid) (citing 8 C.F.R. § 242.17(a)).  It is well-settled that Mr. Gonzalez's failure to appeal the IJ's order of deportation and exhaust his administrative remedies cannot bar collateral review of his deportation proceeding where the defects in the proceeding served to persuade Mr. Gonzalez that any appeal would be futile.

   **b.**  <u>Mr. Gonzalez Was Eligible for §212(c) relief</u>

   Despite any admonitions to the contrary, Mr. Gonzalez *was* eligible for relief from removal under former INA § 212(c), even though Congress eliminated § 212(c) relief before Mr. Gonzalez was put into immigration proceedings.  The removal of §212(c) relief does not apply retroactively.  In <u>St. Cyr</u>, the Supreme Court held that repeal of § 212(c) relief did not retroactively apply to immigrants who were ordered deported based on convictions that pre-dated the repeal of § 212(c).  <u>St. Cyr</u>, 533 U.S. at 295. For example, in <u>Ubaldo-Figueroa</u>, 364 F.3d at 1050, the Ninth Circuit held that aliens are entitled to § 212(c) relief even though they were not eligible for relief when they pled guilty to their crimes.

   In <u>United States for Leon-Paz</u>, 340 F.3d 1003 (9th Cir. 2003), the Ninth Circuit relied on the Supreme Court's decision in <u>St. Cyr</u> to vacate and remand a section 1326 conviction because the IJ had failed to advise Mr. Leon-Paz of his ability to apply for § 212(c) relief, thus depriving him of due process.  The Court granted relief even though the offense to which Leon-Paz plead guilty was not an aggravated felony at the time of the plea.  <u>Id.</u> at 1007.  The Court reasoned that Leon-Paz had pled guilty based upon the understanding that his conviction would not make him deportable.  <u>Id.</u>  Read together, <u>St. Cyr</u>, <u>Ubaldo-Figueroa</u>, and <u>Leon-Paz</u> make clear that the critical factor in assessing whether an IJ's advisals (or lack of advisals) made a deportation hearing constitutionally defective, is *not* whether the IJ informed a defendant of relief actually available at the time of the deportation hearing, but rather whether the defendant had some chance of not being deported when he actually pled guilty that he would not have had if he had pled guilty under the changed immigration law.

Mr. Gonzalez's case squarely fits with the situations addressed by these cases.  The IJ in this case did not inform Mr. Gonzalez that, despite the INS's charges, he was eligible for waiver.  However, Mr. Gonzalez *was* eligible for a waiver based on the state of the law at the time of the offenses for which he was deported.  At the time Mr. Gonzalez committed the crimes for which he was deported, INA § 212(c) read as follows:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) [participants in Nazi persecution or genocide] and (9)(c) [International child abduction].  Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

INA § 212(c).  At the time Mr. Gonzalez was deported, he was a lawful permanent resident with more than seven consecutive years of "lawful unrelinquished domicile" in the United States.  There is no question that, at the time of his deportation hearing, Mr. Gonzalez had not been convicted of one or more aggravated felonies for which he "served . . . a term of imprisonment of at least five years."  At the time of his deportation, Mr. Gonzalez would have been statutorily eligible for § 212(c) relief due to his prior status as a resident alien who had been in the United States for an extensive period of time.  St Cyr, 533 U.S. 289. Like the petitioners in St. Cyr. and  Leon-Paz, Mr. Gonzalez pled guilty to a crime based on his understanding that he would be eligible for § 212(c) relief despite that conviction.  In the meantime, the passage of IIRIRA eliminated § 212(c) relief for persons convicted of aggravated felonies and certain other crimes.  Based on this changed law, Mr. Gonzalez  was summarily deported.

Just as the deportation hearing at issue in St. Cyr deprived that petitioner of his right to due process, Mr. Gonzalez's 1998 deportation hearing deprived him of his right to due process, including his right to be

informed of his right to apply for a waiver of deportation and his right to actually apply for the waiver. Because Mr. Gonzalez was not advised that he qualified for relief from deportation under § 212(c), his deportation hearing was far from "full and fair" as required by law.  Castro-Cortez v. INS, 239 F.3d 1037, 1049 (9th Cir. Jan 23, 2001) (a full and fair hearing is required under the Due Process Clause).

In sum, no one can now contend that Mr. Gonzalez would not have been eligible for such relief, since nothing in the former INA § 212 (c) barred Mr. Gonzalez from seeking and obtaining such relief.  Pursuant to St Cyr, § 212 (c), relief remains available for aliens whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea *under the law then in effect*.  Because Mr. Gonzalez is exempt from the exhaustion requirement in 8 U.S.C. § 1326(d), this Court must hold his 1998 deportation to be invalid.

Additionally, in Cordes v. Gonzales, 421 F.3d 889 (9th Cir. 2005), the Ninth Circuit determined that a situation similar to Mr. Gonzalez's violated the Equal Protection clause of the Constitution.  Cordes was a lawful permanent resident of the United States.  Cordes, 421 F.3d at 891.  Cordes  plead guilty to a conviction, for dissuading a witness with threat of force and to induce false testimony, while AEDPA was in effect.  Id.  Four months after the conviction, IIRIRA was passed.  Id.  The Board of Immigration Appeals retroactively applied the definition of aggravated felony in IIRIRA and determined that Cordes' conviction was an aggravated felony and ordered her removed.  Id.  The Ninth Circuit determined that the INS' application of St. Cyr and Velasco-Medina which denies 212(c) relief for LPR's like Cordes, violates equal protection.   The petition for relief was granted on it's merits.  If this court was to adopt the position that Mr. Gonzalez's case falls outside  St. Cyr and Ubaldo-Figueroa and therefore Mr. Gonzalez would not qualify for relief under either, then Cordes must control.  Thus, Mr. Gonzalez's equal protection rights were violated and he was deprived of due process.

    **4.**       Mr. Gonzalez Was Deprived of His Due Process Rights at the Removal Hearing Due to Mr. Heines' Ineffective Assistance of Counsel.

Deportation causes great hardship and deprives individuals of the right to live and work in the United States; therefore, "[m]eticulous care must be exercised lest the procedure by which an alien is

deprived of that liberty not meet the essential standards of fairness." <u>Biwot v. Gonzales</u>, 403 F.3d 1094, 1099 (9th Cir. 2005)(citing <u>Bridges v. Wixon</u>, 326 U.S. 135, 154 (1945).) One way courts ensure that the standards of fairness are met is by guaranteeing individuals the right to be represented by counsel. <u>Id.</u> In fact, individuals have both a statutory and constitutional right to the assistance of counsel in immigration proceedings. As the Ninth Circuit recently noted in <u>Biwot</u>, "[t]he right to counsel in immigration proceedings is rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)." <u>Id.</u>

The "critical right to counsel" is not a mere formality, but must be infused with meaning. <u>Id.</u> at 1098-99 Thus, an individual must be given sufficient time to obtain counsel. <u>Id.</u> "[A]n alien cannot appear pro se without a knowing and voluntary waiver of the right to counsel." <u>Id.</u> "A waiver is generally not valid unless the IJ expressly asks the petitioner whether he wishes to continue without a lawyer and receives a knowing and voluntary response." <u>Id.</u> (internal citations and quotations omitted) If the individual does not affirmatively waive his or her right to counsel, the IJ must grant the individual a reasonable period for obtaining counsel. <u>Id.</u>

Due process not only requires that an individual be afforded the right to have an attorney in immigration proceedings, it also requires that an individual be afforded *effective* representation. "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." <u>Rodriguez-Lariz</u>, 282 F.3d 1218, 1226 (9th Cir. 2002)(citing <u>Lopez v. INS</u>, 775 F.2d 1015, 1017 (9th Cir. 1985)). The Ninth Circuit reviews claims of ineffective assistance of counsel de novo. <u>Rodriguez-Lariz</u>, 282 F.3d at 1222. "[W]hen an alien alleges that former counsel was constitutionally ineffective, a motion to reopen, like a collateral criminal proceeding, is a means by which he may introduce new evidence regarding his former counsel's performance." <u>Iturribarria v. INS</u>, 321 F.3d 889, 896-97 (9th Cir. 2003).

An attorney's "failure to file the necessary papers in immigration proceedings may constitute ineffective assistance of counsel." <u>Id.</u> at 900 (citations omitted). The same is true where it is a non-attorney

representative who fails to file the necessary paperwork. See Rodriguez-Lariz, 282 F.2d at 1226. For example, in Rodriguez-Lariz, the petitioners argued that their ineffective counsel deprived them of their due process rights to a fair hearing in front of the IJ. Id. at 1226. The Board of Immigration Appeals (BIA) did not directly address whether the petitioners received ineffective assistance of counsel. Id. However, on appeal, the Ninth Circuit found that the petitioners received ineffective assistance of by their non- attorney representative because their representative failed to timely file their application for suspension of deportation. Id. Thus, the Ninth Circuit reversed and remanded with directions to grant the petitioners' motion to reopen. Id. at 1227. Accord Castillo-Perez v. INS, 212 F.2d 518, 526 (9th Cir. 2000)(alien received ineffective assistance of counsel where attorney failed to file application for suspension of deportation constitutes due process violation); Rojas-Garcia v. Ashcroft, 339 F.3d 814, 825-26 (9th Cir. 2003) (noting that attorney's failure to file a brief on appeal plainly supports claim of ineffective assistance of counsel).

In this case, Mr. Gonzalez was deprived of the effective assistance of counsel because his disbarred attorney waived serious objections to the conviction documents used against him, failed to respond that Mr. Gonzalez was not an aggravated felon, failed to properly file the application for § 212(c) relief, and failed to file a notice of appeal. Additionally, it appears that although Mr. Heine held himself out to be a lawyer "in good standing of the bar of the California Supreme Court," he in fact was disbarred from practice at the time of Mr. Gonzalez's deportation. Mr. Gonzalez clearly stated that he wished to have a lawyer and thus his case was continued to allow him to do so.

**B.**     Mr. Gonzalez's Deportation Proceeding Was Fundamentally Unfair and Prejudicial

Finally, Mr. Gonzalez must show that the proceedings were fundamentally unfair. As noted above, "[a]n underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (quoting Zarate-Martinez, 133 F.3d at 1197). To establish prejudice, Mr. Gonzalez does not have to show that he would have been granted relief. Instead, he need

only show that he had a "'plausible' ground for relief from deportation." Id. at 1050 (citing Arrieta, 224 F.3d at 1079). Furthermore, as noted previously, although Mr. Gonzalez carries the initial burden on the issue of prejudice, once Mr. Gonzalez makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome. Gonzalez-Valerio, 342 F.3d at 1054 (emphasis added).

In answering these questions, the Court is *not* to put itself in the shoes of the immigration judge before whom Mr. Gonzalez appeared in 1998—the immigration judge who wrongly informed Mr. Gonzalez, "I don't see any relief available to you." A long line of cases from the Supreme Court on down make clear that this Court's determination is much different. The only question before the Court is whether *an* immigration judge reasonably could have granted Mr. Gonzalez relief in 1998. See, e.g., St. Cyr, 533 U.S. 289, Ubaldo-Figueroa, 364 F.3d 1042, Leon-Paz, 340 F.3d 1003. While there may be no case explicitly defining "plausible" in this context, Webster's Third New International Dictionary 1736 (1993), defines "plausible" as "superficially fair [or] reasonable . . ." and "superficially worthy of belief." This is, of course, a much lower and less discretionary standard than Mr. Gonzalez would have faced in immigration court. If Mr. Gonzalez has made a prima facie showing of prejudice, and the government has not proven that his claim would have been dismissed without some consideration, then this Court must grant Mr. Gonzalez's motion. See, e.g., Gonzalez-Valerio, 342 F.3d at 1054 (discussing the government's burden).

**1.** Mr. Gonzalez Had Plausible Grounds for Relief *As a Matter of Law*.

In determining whether Mr. Gonzalez's circumstances may have moved an immigration judge to grant him discretionary relief, this Court is held to the plausibility standard affirmed by Supreme Court and Ninth Circuit precedent. Simply put, it is not this Court's task to hold a belated immigration hearing, to attempt to recreate history. Nor is it this Court's role to decide whether it would have granted relief in Mr. Gonzalez's case. Unlike the hypothetical immigration judge to whom Mr. Gonzalez's § 212(c) claim might have been assigned back in 1998, this Court does not have the discretion to make a close call in the

government's favor.  To the contrary, if this Court finds that relief was a plausibility, then Mr. Gonzalez must prevail.

As explained previously, Mr. Gonzalez was statutorily eligible for relief based on his immigration status and long-term residence in the United States.  Given Mr. Gonzalez's statutory eligibility for relief and the state of this Circuit's law in 1998, Mr. Gonzalez thus had plausible grounds for relief as a matter of law.  In <u>Yepes-Prado</u>, 10 F.3d 1363, which remains good law in this Circuit, the Ninth Circuit held that an immigration judge could not summarily deny a petitioner § 212(c) relief based on the petitioner's conviction for selling heroin.  <u>See</u>, <u>id</u>. at 1371, 1371 n.17 (noting that the immigration judge's identifying Mr. Yepes-Prado's conviction for possession of heroin for sale as an adverse factor did not discharge his responsibility to give the petition balanced consideration).  In so doing, the Court explained the Congressional intent behind § 212(c) as follows:

[B]y providing that 212(c) relief will remain available to persons such as Yepes-Prado, who have served less than five years imprisonment on account of a narcotics conviction, Congress demonstrated its intent that the Attorney General should consider these applications on a case by case basis, while carefully weighing all pertinent considerations, including the particulars of the petitioner's criminal conduct.

<u>Id.</u> at 1371.

Finding that " the IJ may have denied relief in large part on the basis that Yepes-Prado committed a crime involving drugs," the court vacated the Board of Immigration Appeal's denial of Mr. Yepes-Prado's petition for § 212(c) relief and remanded for proceedings consistent with its opinion.  In so doing, the court unequivocally held that, [w]hat [the INS] *may not do* is categorically deny 212(c) relief to drug offenders who have served less than five years incarceration." <u>Id.</u> 1371 (emphasis added).  Undergirding the court's holding in <u>Yepes-Prado</u> is the quite sensible separation of powers-driven conclusion that the INS could not have categorically denied § 212(c) to any petitioners not statutorily barred from such relief, because "Congress could have decided to deny discretionary relief to [those petitioners], but it explicitly chose not to do so." <u>See, e.g.</u>, <u>id.</u> at 1371.  Because Mr. Gonzalez was not statutorily barred from § 212(c) relief, the INS could not have categorically denied him relief.  Thus, relief was a possibility.  Like the petitioner in <u>Yepes-</u>

Prado, Mr. Gonzalez's case would have presented an immigration judge with a tricky balancing of the positives against the negatives.  As is clear in Mr. Gonzalez's case, the positives tip the scales in his favor.  Because Mr. Gonzalez's claim could not have been summarily dismissed, it was plausible.  Accordingly, Mr. Gonzalez's grounds for relief were plausible as a matter of law.

> **2.**          Given Mr. Gonzalez's Strong Equities, It Would Have Been Reasonable For an Immigration Judge to Balance the Equities in His Favor.

Even if this Court reads "plausible" to mean something more than "superficially worthy of belief," or otherwise rejects Mr. Gonzalez's argument that his grounds for relief were plausible as a matter of law, Mr. Gonzalez's strong equities ensure that an immigration judge's decision would have involved at least a close call for the Immigration Judge.  In making a § 212(c) determination, immigration judges in 1998 were charged to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interest of the country."  See Matter of Marin, 16 I & N Dec. 581, 584-85 (BIA 1978).  As the court explained in Yepes-Prado:

Favorable considerations include (1) family ties within the United States; 2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business and property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character.  To be weighed against these factors are 1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident.

Yepes-Prado, 10 F.3d at 1366.  Applying these factors, between 1989 and 1995 alone, § 212(c) waivers were granted to 10,000 aliens—that is, over *51.5%* of § 212(c) relief applicants whose cases reached a final decision**.**  St. Cyr, 533 U.S. at 296 n.5.  Given Mr. Gonzalez's equities, it is at least plausible that he would

have fared favorably under these better-than-50/50 odds.

In Ubaldo-Figueroa the Ninth Circuit held that Ubaldo-Figueroa had a plausible legal challenge to his removal order that he could have appealed had he known that he had the right to appeal on facts strikingly similar to those found here.  In Ubaldo-Figueroa the Court noted in footnote 2:

Former INA § 212(c) "has been interpreted by the Board of Immigration Appeals (BIA) to authorize *any* permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation," INS v. St. Cyr, 533 U.S. 289, 295, 121 S. CT. 2271, 150 L.Ed.2d 347 (2001) (emphasis added), if he or she had committed a deportable offense.  In St. Cyr, the Supreme Court noted that "[t]he class of aliens whose continued residence in this country has depended upon their eligibility for § 212(c) relief is extremely large, and not surprisingly, a substantial percentage of their applications for § 212(c) relief have been granted."  Id. at 295-96, 121 S. CT. 2271.  The Court further noted that "[t]he extension of § 212(c) relief to a deportation context has great practical importance because deportable offenses have historically been defined broadly." Id. at 295, 121 S. CT. 2271. The repeal of § 212(c) has drastic consequences for LPRs who committed deportable offenses classified as "aggravated felonies" after IIRIRA was enacted, because they are no longer eligible for § 212(c) relief.

Ubaldo-Figueroa, at 1045, n.2.  Like the claim Mr. Gonzalez makes here, Mr. Ubaldo-Figueroa's claim was a St. Cyr claim.  Id. at 1050.  As explained above, the Supreme Court held in St. Cyr that the repeal of § 212(c) did not retroactively apply to immigrants who were ordered deported based on convictions that pre-dated the repeal of § 212(c).  Because Mr. Gonzalez's situation mirrors the situations the Supreme Court addressed in St. Cyr and the Ninth Circuit addressed in Ubaldo-Figueroa, the only remaining question is whether Mr. Gonzalez was prejudiced by his defective deportation proceeding.

The Ninth Circuit's decision in Ubaldo-Figueroa is also instructive on this point.  In Ubaldo-Figueroa, the Ninth Circuit held that Mr. Ubaldo-Figueroa had shown prejudice where he had been gainfully employed since he had come to the United States and had substantial family ties in the United States, including a United States citizen wife and two United States citizen children.  In that case, the Ninth

Circuit held that having United States children is a "weighty factor in support of the favorable exercise of discretion under 212(c)." Ubaldo-Figueroa, 364 F.3d at 1051 (citing Kahn v. INS, 36 F.3d 1412, 1413 (9th Cir. 1994)). To that end, the Ninth Circuit noted Mr. Ubaldo-Figueroa's active role in his children's education and upbringing as factoring heavily into the equities equation. In light of these factors, the Court in Ubaldo-Figueroa held that "[t]he equities in Mr. Ubaldo-Figueroa's favor are significant. Thus, we conclude that Ubaldo-Figueroa had a plausible claim for relief and the IJ's unconstitutional failure to inform him that he was eligible for § 212(c) relief prejudiced him." Ubaldo-Figueroa, 364 F.3d at 1051.

At the time of his deportation, Mr. Gonzalez's equities were even more profound than those the Ninth Circuit found formed the basis for a "plausible claim" in Ubaldo-Figueroa. Mr. Gonzalez was raised and educated in the United States, and his immediate family resides in the United States. Since the age of about 7, Mr. Gonzalez had been a lawful permanent resident of the United States. He was a lawful permanent resident at the time he was ordered deported. All his children were United States citizens. His wife and family members were lawful permanent residents. His schooling was in the United States. His entire work history was in the United States. He literally had little to no ties to Mexico other than his birth and once a year family visits.

Even more so than in Ubaldo-Figueroa, Mr. Gonzalez's family was greatly impacted by his deportation. Mr. Gonzalez's parents suffered greatly when their son was effectively lost to them. Mr. Gonzalez's siblings and extended family lost an important source of support. Additionally, Mr. Gonzalez's wife and three United States citizen children live in the United States. Ms. Gonzalez and Mr. Gonzalez's daughters were effectively deprived of his support and companionship when he was deported. There is no doubt at all that Mr. Gonzalez's deportation has severely impacted the lives of his wife and children. Significantly, Ms. Gonzalez relied on Mr. Gonzalez's emotional and financial support to raise their children. When Mr. Gonzalez was deported, Ms. Gonzalez was not able to remain in their family home. With her three young children, under the age of 6, Ms. Gonzalez, moved into her parents home. She was not able to care for the children on her own while working full-time. The effect of the family's new economic

circumstances alone is incalculable—that Ms. Gonzalez and the children were left without a husband and father made matters even worse.  As in Ubaldo-Figueroa, the record in this case "includes evidence of the active role [the defendant] has taken in his children's education and upbringing."  There can be no doubt whatsoever that Mr. Gonzalez's deportation has caused incredible hardship to his family.

Mr. Gonzalez had no prior convictions before the conviction for which he was ordered deported. Notably, upwards of fifty percent of the people who applied for § 212(c) relief were granted relief by immigration judges during the time period before the law changed.  St. Cyr., 533 U.S. at 296 n.5. Importantly, the conduct for which Mr. Gonzalez was deported occurred when he was a young man with three young children—a factor that no doubt would have mitigated strongly toward the IJ's giving him another chance had the IJ believed he had the discretion to do so.  On balance, it is extremely likely that Mr. Gonzalez would have been entitled to § 212(c) relief due to his life in the United States, the fact that he came here as a young child, the dependence of his United States citizen children and family on him, his strong family ties, his proven work ethic, and the many other equities discussed above.  Accordingly, Mr. Gonzalez has more than shown that he had "plausible grounds" for relief.

AN ALIEN WHO HAS NEVER LEFT THE UNITED STATES
CANNOT BE CONSIDERED REMOVED

On May 9, 1995, Mr. Gonzalez was ordered deported by Judge Williams at a hearing at Donovan State Prison but not before he was prosecuted in 1995 for illegal entry. Upon his release from Donovan State Prison, he was transferred into federal custody and appeared before the Honorable William B. Enright. Judge Enright sentenced Mr. Gonzalez to 63 months.  Mr. Gonzalez was subsequently deported in 2000 after completing that sentence.  However, as noted, after his deportation hearing he was not immediately removed, even though ordered removed.  According to United States v. Romo-Romo, 246 Fed. Rptr. 3d 1272 (2001), an alien who has never left the United States cannot be said to have been deported and reentered.  He may not, therefore, be convicted for reentering or attempting to reenter the United States.  See also Alvarez-Mendez v. Stock, 941 F.2d 956, 961 n. 4 (9th Cir. 1991), "...[d]eportation refers to the removal from the country of aliens who are physically present in the United States."

**Page 21**

## II.  THIS COURT SHOULD DISMISS THE INDICTMENT FOR ITS FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE

The Indictment charges Mr. Gonzalez-Ruiz with being a previously-deported alien found in the United States in violation of 8 U.S.C. Section 1326.  The Indictment fails to allege elements necessary to convict Mr. Gonzalez-Ruiz of the offense: that Mr. Gonzalez-Ruiz knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States.  As a consequence, it must be dismissed.  See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); see also United States v. Pernillo-Fuentes, 252 F. 3d 1030 (9th Cir. 2001); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).

These issues were decided against Mr. Gonzalez-Ruiz in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004).  However, these issues remain open in the Supreme Court.  To reserve these issues for further review, Mr. Gonzalez-Ruiz incorporates the arguments made by the defendant in Rivera-Sillas.

## CONCLUSION

Because Mr. Gonzalez's has shown that he is exempt from the exhaustion requirement, that the underlying removal proceedings at which his deportation order was issued improperly deprived him of the opportunity for judicial review, and that the entry of that order violated due process and prejudiced him, making it "fundamentally unfair," this Court must sustain Mr. Gonzalez's collateral attack on his deportation.  Given that the defective removal order serves as a predicate element of the charge against Mr. Gonzalez, the proper remedy is dismissal of the indictment.  Ubaldo-Figueroa, 364 F.3d at 1048; see also Mendoza-Lopez, 481 U.S. at 837-838; Zarate-Martinez, 133 F.3d at 1197.

For the foregoing reasons, Rodolfo Gonzalez-Ruiz respectfully requests that this Court grant these

///
///
motions.

1

2        Respectfully submitted,

3                                            S/ Michael Berg
4        Dated: July 19, 2008                MICHAEL S. BERG
                                             Attorney for Gonzalez-Ruiz
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27